# Exhibit V1-V13

# AFFIDAVITS AND RECANTMENTS OF ALLEGED VICTIMS AS FIRSTHAND WITNESSES;

## AFFIDAVIT OF HANAAN MERRIT

**CLARKE COUNTY**

I, HANAAN MERRIT, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Hanaan Merrit. I was born October 26, 1988. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I, Hanaan Merrit am stating for the record that Dr. Malachi Z. York never molested, raped, or sexually abused me in any way nor did I witness Dr. Malachi Z. York molest, rape or perform any sexual activity with anyone.

3. I, Hanaan Merrit am also stating that I have known Dr. Malachi Z. York most of my life.

4. I am affirming that on May 8, 2002, I was interviewed by Federal Agents Mary Mangrum and Lisa Speaker who questioned me about Malachi Z. York, of which I told them that I never met because I was out of mind and guns were pointing at me. I thought that I was going to die and I told them anything.

5. I am also affirming that on May 8, 2002, after being interviewed I was striped away from my family. Selha Eddington, Husna Evans, Hesna Evans, Issa Johnson and myself (all minors) were taken by strangers to a small house in Milledgeville, GA without our parents consent.

6. I being intimidated, scared and threatened was interrogated by Federal Agents being told by them that they know I was molested although I denied the allegations, they continued to badger me. They repeatedly told me that I was molested and covering up for Mr. York alleging that he claimed that he was going to kill me.

**Exhibit J-1**

7.  I writing this to state that I was badgered, threatened and coerced by the Federal Agents in attempts to make statements against Malachi Z. York that were not true.

Signed _____

Print _____

I HEREBY CERTIFY that on this _13_ day of _June_____, 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

_Hanaan  Merritt_____, known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

Notary Public

My Commission Expires:

LAURIE WELCH
Notary Public, Paulding County, Georgia
My Commission Expires April 11, 2009

# AFFIDAVIT OF SAKINAH WOOD

## STATE OF ALABAMA

I, SAKINAH WOOD, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Sakinah Wood. I was born February 3, 1982. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I, Sakinah Wood did reside on the property at 404 Shady Dale Rd from 1994 til 2004. I have known Dr. Malachi Z. York for most of my life and I am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in any way nor did I see nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors or persons.

3. I am hereby affirming that I was interviewed by FBI agent Jalaine Ward, on May 8, 2002 and also two other agents were present FBI agent Sally Heintzysh and FBI agent Tracey Bradford.

4. Jalaine Ward asked me several questions pertaining to my knowledge of Mr. York and acts of sexual molestation of which I told them I had no knowledge. Jalaine Ward asked me the same questions repeatedly. My answers were consistent and truthful. I had no knowledge of any sexual molestation, rape, inappropriate touching or sexual abuse.

5. Jaline Ward then told me and I quote, "Well, Sakinah, you know, you're not saying this now, but sooner or later, it will come out, because Mr. York is never coming out!" Meanwhile, the other agents Sally Heintzysh and Tracey Bradford had their guns in my face.

6. They told me that if I did not comply with their allegations I would go to jail. At which point I felt pressured.

Exhibit J-2

JUN-19-2007 07:42 FROM:                                    TO:14802475610         P.4/7

7. I also, want to state for the record that FBI agent Jalaine Ward subpoenaed me outside of the courthouse in Brunswick Georgia. She stated and I quote, "Get on the right side!"

Signed _____

Print _____

I HEREBY CERTIFY that on this ___ day of _____ June _, 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

_____ Sakina Wood _____, known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

Notary Public _____

My Commission Expires: 1/7/2009

### AFFIDAVIT OF DEBORAH SMITH

My name is Deborah Smith. I am over the age of 18. I am making this Affidavit based on my personal knowledge of the facts.

I've known a man from West Africa by the name of Dr. Malichi Z. York for over 20 years. On September 14, 2002 I was arrested and detained in Clayton County Jail. Dr. Malichi Z. York was also detained there, held as a prisoner for Sheriff Howard Richard Sills.

I wrote Dr. Malichi Z. York a letter about returning to Liberia, West Africa. Dr. York never received the letter. It was used in court to prove he was a flight risk.

Dr. York had also spoke with a correction officer by the name of Yuri Johnson who worked in Clayton County. Yuri Johnson had told me that Dr. Malichi Z. York did mention that he would like to return to West Africa. I was excited and wrote Dr. York stating that I may go to West Africa, Liberia also and that I heard from Officer Johnson that he would like to return, Dr. York never received that letter.

I swear and affirm the above statement is true and correct so help me God.

Deborah Smith

Sworn to and subscribed before me, this
19 day of May, 2005.

Notary Public

NOTARY PUBLIC, ATHENS-CLARKE COUNTY, GEORGIA
MY COMMISSION EXPIRES MARCH 23, 2007

**Exhibit J-3**

## AFFIDAVIT OF ISSA MICHAEL JOHNSON

### FULTON COUNTY

I, ISSA MICHAEL JOHNSON, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Issa Michael Johnson. I was born September 11, 1988. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I, Issa Michael Johnson am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in any way nor did I see nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors or persons in Upstate New York, also called Nubia.

3. I, Issa Michael Johnson am stating for the record that Dr. Malachi Z. York never molested, raped, inappropriately touched me, or abused me sexually in any way nor did I see nor witness Dr. Malachi Z. York molest, rape or perform any sexual activity with any minors or persons in Georgia particularly 404 Shady Dale Rd. Eatonton, GA and Athens, Georgia.

4. I am affirming that in June of 2003, I was in the custody of DEFACS (Department of Family and Children Services) under the care of Ms. Eileen Burke. I was picked up from school by Jana Wydell and I asked where we were going and she replied, "You have a visit with Richard Moultrie." I told her repeatedly that I did not want to see him. I was told that it's not up to me.

5. I told FBI agent Richard Moultrie that I did not want to talk to him. That I was not molested by Mr. York or anyone else. He said that I need to make these statements.

6. FBI agent Richard Moultrie then reminded me that my mother Kathy Johnson was incarcerated and if I cooperated and made certain statements and accusations that he could get my mother out of prison and not mention her name in trial. Richard Moultrie wanted me to exchange false statements for this favor.

7. I considered lying and telling them what they wanted to hear to help my mother. Even though I felt compelled to go along with the stories I repeatedly said I was never molested.

8. There were several alleged victims namely Krystal Harden "Beluwra" and Amala Noel sent by Federal agents to get me to falsely testify against Malachi Z. York and Kathy Johnson. Krystal told me that she couldn't wait to get her money from this trial.

Exhibit J-4

9. The day of the trial prior to my testimony FBI agent Jalaine Ward reminded me and several others of what we needed to say. Jalaine Ward told us not to mention the previous guilty plea taken by Malachi Z. York. She made sure that we remembered all the stories given to us by the Federal agents.

10. When I didn't keep up with my end of the deal at the trial of Malachi Z. York and testified honestly, FBI agent Richard Moultrie mentioned my mother's name anyway in his last question to me during trial. He asked, "Your mother is Kathy Johnson, right? No further questions your honor."

11. After the trial the government punished me in various ways. They locked me down in a DEFACs facility and took away all privileges including phone, visits with friends and after school activities. Staff members became upset with me and treated me harshly.

12. The reason that I make this affidavit is because I know that it was not right for the Federal agents to coerce, threaten, intimidate or exchange favors for false testimony against any individual who by right should have a fair trial.

Signed _Michael Johnson_

Print _Michael Johnson_

I HEREBY CERTIFY that on this _12th_ day of _June_, 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

_Michael Johnson_, known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

_[signature]_
Notary Public

My Commission Expires:

ELAINE A. BOLSTON
NOTARY PUBLIC, CLAYTON COUNTY, GEORGIA
MY COMMISSION EXPIRES SEPT. 30, 2007
MY Ct ... SEPT 30, 2007

## AFFIDAVIT OF EBONY HILL

District of Columbia

I, EBONY HILL, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as follows:

1. My name is Ebony Hill. I was born on February 3, 1977. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I am hereby affirming that the majority of my testimony at the Federal criminal trial of Dwight York (Malachi York) was false, specifically in the area of my personal sexual activity or relations with Mr. York and my witnessing Mr. York having sexual activity or relations with other children.

3. I deny having sexual relations or activity with Mr. York when I was about 13-14 years old in upstate New York or "Nubia" as we called it. I completely deny having sexual relations or activity with Mr. York in the State of New York.

4. I deny witnessing Mr. York having sexual relations or activity with any minors at any time-whether it was New York or Georgia. This includes the persons I named that I witnessed him having sexual relations and activity with in New York, including Sakinah Parham, Nicole Lopez, Chandra Lankin.

5. I deny having sexual relations or activity with Mr. York in Georgia while I was under seventeen (17) years of age.

6. I deny having sexual relations or activity with Mr. York at Disney World.

7. I affirm that Mr. York is the father of my son, born when I was eighteen (18) years old.

8. The reasons I testified untruthfully against Mr. York at trial is because I was personally angry at Mr. York. I was angry because I felt at the time that I was mistreated, neglected and shunned by the father of my son. I was jealous and envious of other women who had gained his favor and attention. I was bitter at him because of the way he allowed me to be treated on the land and not allowed to leave. I was also bitter because I wanted to have fun and experience the things that life had to offer and Mr. York would not allow me. I was vindictive and wanted to pay him back for the above perceived wrongs.

Exhibit J-5

9. I came forth with my allegations because I was afraid that I would be prosecuted for neglect. The community (Nuwaubians) and other mothers of children on the land (404 Shady Dale Road) of was saying that all persons who were involved and did not come forward to help were going to be prosecuted for the neglect of their children.

10. I also felt pressured because at trial time the government told me they were aware of some alleged bank fraud activities involving my boyfriend and myself.

Signed _Ebony Hill_

Print _Ebony Hill_

I HEREBY CERTIFY that on this 23 day of may , 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared
_Ebony Hill_ , known to me, or satisfactorily proven, to be the person whose name is subscribed to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

Notary Public

My Commission Expires:

HARRIS S. AMMERMAN
Notary Public, District of Columbia
My Commission Expires November 14, 2008

### AFFIDAVIT OF SAMAIYAH JAMIYLAH ELLIS

**STATE OF GEORGIA**
**COUNTY OF CLARKE**

SAMAIYAH JAMIYLAH ELLIS, duly sworn, deposes and says:

1. My name is Samaiyah Jamiylah Ellis. I am 18 years of age and reside in Athens, Georgia. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. It was May 16, I was at school at my last period and I was called to go to counseling office about an hour before it was time to leave school. I went to the counseling office to a room with three other people and they stated that they wanted to talk to me. I didn't know what it was about and I went in the room and they told me, this is between them and me, not anybody else and don't tell my mother and anybody else. It's just between us, and they were asking me questions about Dr. York. They asked me if I was ever molested by Dr. York. I told them no. Then one of the females told me they were having papers sent to me in regards if I had said anything to help the situation, what to tell them, what happened and what they think happened. I told them it didn't happen and they kept forcing me by saying that if I don't say this then they'll probably put me in jail or they would file a whole bunch of papers against me.

3. So they kept me in the room for too long and I wanted to leave because I was scared. I told them what they wanted to hear because I was very afraid of the part when the lady was telling me about going to jail. So I told them what they wanted to hear because I felt that I would go to jail if I didn't go along with what they were saying. I missed my bus ride home, so they told me that they could drop me off. Then they said they really couldn't do that so they would drop me off somewhere close to my house because they couldn't be seen with me.

4. I came home and I told my mother they put fear in me and I told them what they wanted to hear. I was afraid and I wanted to hurry up and get out of there and the next day I felt bad about it and I called Ms. Franklin and I told her it's a conspiracy, that none of this happened then I felt bad and I told her he didn't deserve none of this because Dr. Malachi, he's a good person and he didn't do anything to me, nothing happened to anybody and he has love for everybody, and he's a good man. So I felt bad that's why I called her.

5. I received constant phone calls and visits from many of them who had been angry with Dr. York for having all of us leave the land for many mischievous things we did. I didn't know that the conversations with Habiba Washington, Safa'a LaRoche, Krystal Harden, etc. would lead up to the arrest of Dr. York.

1

**Exhibit J-6**

JUN-19-2007 07:48 FROM:        TO:14802475610    P.2/8

6.     I understand that I am named as an alleged victim and witness in several counts of the State and Federal Cases against Dr. York.

7.     I was never called by the prosecution to testify in court against Dr. York. I was never given a subpoena to come to court to testify against Dr. York.

8.     I want to state again that I was never molested by Malachi York. I never witnessed Malachi York molesting anyone. I do not know of anyone he has ever molested. I do not know of any children he has ever had sex with. This includes Krystal Harden, Amala Noel, Radeya Herbert, Safa'a LaRoche, Salha Eddington, Husna, and Hasna Evans. I do not believe that Malachi York should be in prison for crimes he did not commit. I want the truth to be known.

*Samaiyah Ellis*

Samaiyah Jamiylah Ellis

Sworn before me
~~April 23, 2004~~ / April 25 2004

*Nenem Okong*
NOTARY PUBLIC

Notary Public, Barrow County, Georgia
My Commission Expires Oct. 2, 2006

2

JUN-19-2007 07:49 FROM:
11/23/2008 10:49    404--221-1255    FEDEX KINKO'S    1527    PAGE 01
TO:14802475610    P.5/8

## AFFIDAVIT OF ABDUS SALAAM LAROCHE

Fulton County

I, ABDUS SALAAM LAROCHE, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Abdus Salaam LaRoche. I was born March 20, 1984. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I am hereby affirming that the majority of my testimony at the Federal criminal trial of Dwight York (Malachi York) was false, specifically in the area of my personal sexual activity. I am also stating that I did not engage in any type of sexual activity with Mr. York including oral sex or anal sex. Nor did I witness Mr. York engage in sexual activity or any inappropriate sexual behavior with any minors or adults.

3. I deny that Khadijah "Macullah" Merrit performed any oral sex on me in the presence of Mr. York when I was about 13, nor did I witness any sexual activity between Mr. York and Khadijah "Macullah" Merrit in Eatonton, Georgia.

4. I deny that Mr. York performed anal sex on me at any time. I also deny any sexual relations between myself and Khadijah Merrit in the presence of Mr. York at any time.

5. I deny having or witnessing any sexual relationships with Mr. York involving the people I named at trail including Issa Johnson, and Khadijah Merrit on 404 Shady Dale Rd in Eatonton, Georgia.

6. I deny having any sexual activity with Mr. York inclusive of all inappropriate acts including anal sex or oral sex in Athens nor with any of the people that I named in my testimony including Krystal Harden, Khadijah Merrit and Nicole Harden "Husna".

7. I affirm that the reason I testified falsely against Malachi York and others aforementioned is because I was told that I had to go along with the stories as everyone else did. FBI Jalaine Ward told me and I quote, "Other people already came forth and we already know what happened and it's best that you do the same!"

Exhibit J-7

8. At this point I felt alone and scared and went along with the stories FBI Jalaine Ward gave me even though I repeatedly stated that I was never molested or sexually abused by Mr. York or anyone.

9. I was pressured by FBI agent Jalaine Ward who then told me that I would be okay if I just cooperate with stories of molestation that I had no knowledge of.

10. I also affirm that I had several interviews with FBI agent Richard Moultrie to make sure my stories matched with others.

11. I am coming forth now to put the truth on record. I am no longer afraid of hiding the truth behind the conspiracy of Malachi York. I felt that I was wrong in attesting to these false allegations and I go on record stating that I never saw any type of child molestation involving Malachi York.

Signed _____

Print _____

I HEREBY CERTIFY that on this 21st day of November, 2001, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

_____, known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

Notary Public

My Commission Expires:

Certified signature only

## AFFIDAVIT OF TAARIQ "DAVID" NOEL

Fulton County

I, TAARIQ NOEL, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as following:

1. My name is Taariq Noel. I was born October 25, 1985. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. I am hereby affirming that the majority of my testimony at the Federal criminal trial of Dwight York (Malachi York) was false, specifically in the area of my personal sexual activity. I am also stating that I did not engage in any type of sexual activity with Mr. York including oral sex or anal sex. Nor did I witness Mr. York engage in sexual activity or any inappropriate sexual behavior with any minors or adults.

3. I deny having any sexual involvement with Mr. York in upstate New York at age 7 or any age.

4. I deny having watched or seen any pornographic cartoons or inappropriate adult material with Mr. York nor any adult specifically Chandra Lampkin "Najlaa" at any time.

5. I deny being involved in any sexual activity or witnessing any inappropriate behavior with Mr. York or any adults as I testified in court specifically Kathy Johnson, Chandra Lampkin "Najlaa" or Khadijah Merrit "Mucullah" while living in Eatonton Georgia.

6. I deny having or witnessing any sexual intercourse including oral nor anal involving Khalid Eddington "Eddie", Issa Johnson, and Abdul Saluum "Shilemooh" with Mr. |York, Kathy Johnson, Chandra Lampkin "Najlaa" or Khadijah Merrit "Mucullah".

7. I testified falsely against Malachi York, Kathy Johnson, Chandra Lampkin "Najlaa" and Khadijah Merrit "Mucullah" for several reasons. The main reason was the threats made against me by FBI agent Joan Cronier and FBI agent Richard Moultrie. I was told by Joan Cronier that if I denied the allegations that my mother would be incarcerated for fraud.

Exhibit J8

8. I didn't know my legal rights and I was told that several individuals involved my name falsely in these allegations. At that age you don't know that you can disagree with the FBI.

9. The specifics of my testimony come from stories that were forced on me by FBI agents Joan Cronier and Richard Moultrine. I felt trapped to go along with the allegations in order to protect my family including my mother Barbara Noel, and my sisters Nicole Lopez and Amala Noel from the threats of being incarcerated.

Signed _____

Print _____

I HEREBY CERTIFY that on this _12__ day of ___July___, 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared

___TAARIQ NOEL___, known to me, or satisfactorily proven, to be the person whose name is subscribe to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

                                                    Notary Public

RUANEA BOLSTON
NOTARY PUBLIC, CLAYTON COUNTY, GEORGIA
MY COMMISSION EXPIRES SEPT. 30, 2007

My Commission Expires:

EXHIBIT V1-V13

# Second Nuwaubian recants testimony



The Covington News

Tuesday,
May 18, 2004

PROUD TO BE NEWTON COUNTY'S NEWSPAPER SINCE 1865

Phone: 770-787-NEWS

WWW.covnews.com

## Witnesses say York never molested them

**Pat Hogan**
phogan@covnews.com

United States District Attorneys are suffering their second setback in less than two weeks in the case against Malachi York, highly publicized figurehead of the United Nuwaubian Nation of Moors, after a second important witness and alleged victim has come forward to recant earlier testimony that York molested her.

In a video recording that, as of Monday afternoon, had been released only to The Covington News, Samaiyah Jamiylah Ellis, one of 14 alleged victims listed in the original York indictment, recanted her original allegation to the FBI that she was molested by York as a juvenile.

The video, dated April 20, was produced by a videographer with Ellis' personal attorney present, according to Frederick Johnson, a York legal supporter and Nuwaubian member.

In the taped statement, Ellis, who was reportedly pulled out of a high school class by FBI agents investigating York, said that she told the agents "what they wanted to hear" because she was frightened.

According to Ellis, the FBI agents instructed her not to tell anyone, including her mother, about the interview, which reportedly took place within the school.

After the interview, the agents reportedly drove Ellis home because she had missed her bus, but they refused to drop her off in front of her house in order to avoid being seen with her, according to Ellis.

Ellis said that she did tell her mother about the incident and reported to officials the following day that she had lied to the FBI agents.

Attempts to contact FBI lead investigator Jalaine Ward were unsuccessful.

## Trial transcripts sealed

Transcripts of Ellis' testimony in the federal trial against York are unavailable due to the fact that U.S. District Court Judge C. Ashley Royal sealed all transcripts of the trial nearly one month ago, according to officials at the U.S. District Court Office in Macon. The motion to seal the transcripts, which was filed by the prosecution, is sealed as well.

Ellis' recantment comes on the heels of another reversal of testimony. On April 18, 2003, a key witness for the prosecution's case, former Nuwaubian member Habiba Washington, filmed a video recantment in the presence of her personal attorney,

See Nuwabians page 5

<u>Affidavit of Ebony Richards</u>

State of  <u>Georgia</u>
County of  <u>Clarke</u>
 Ebony Richards personally came and appeared before me,
The undersigned notary, the within named _Ebony M Richards_
Who is a resident of ____Clarke____ County, State
Of __Georgia___, and makes this her statement and Affidavit
Upon oath and affirmation of belief and personal knowledge that
The following matters, facts and things set forth are true and correct
To the best of her knowledge.

My name is Ebony Richards born November 20, 1980.  My maiden name is Ebony
Henry. I have been married to Gerald Richards since July 22, 2002. I am 26 years of age
and reside in Athens,GA. I make this affidavit of my own free will. No one has
threatened me or coerced me to make it. Nor have I been offered anything of value in
return for making this affidavit.

On February 11, 1995 ,at the age of  14 years old, I moved onto the property at 404
Shady Dale Rd. in Eatonton, GA.  I resided there until August,2004.

I, Ebony Richards state for the record that Malachi Z. York has never molested, raped,
touched or behaved in any indecent or inappropriate manner towards me  in any form or
fashion, nor have I seen Mr. Malachi Z. York  molest, rape, touch, or behave indecent or
inappropriate towards  any other child, adult etc..  Malachi Z. York and myself, Ebony
Richards have never engaged in sexual activities of any kind, form or fashion together. I,
Ebony Richards have never engaged in sexual activities of any kind, form or fashion with
other individuals in the presence of Malachi Z. York.

I, Ebony Richards state for the record that I have never witnessed Malachi Z. York
having or engaged in any sexual activities of any kind, form or fashion with the following
individuals- Amala Noel, Safaa La Roache, Saiha Eddington, Arlene Hamilton.

I, Ebony Richards state that while living in Eatonton, GA, I never was witness to nor
participated in any video of  pornographic or sexual nature with anyone including
Malachi Z. York.

Dated the _June 22_ day of _07_ ,20_07_.
_Ebony M Richards_
Signature of Affiant.
Sworn to and subscribed before me, this is the _7th_ day of
_June_ ,20 _07_ .

8. They told me that others mentioned my name as being molested by Malachi. They (FBI) gave me details of what others allegedly said and I was told by everyone to admit to it and go along.

9. I felt pressured and coerced into cooperating with the F.B.I. I figured that if I didn't cooperate, that I would be going to jail.

10. I was subpoenaed to testify, and did testify before the grand jury of the State of Georgia out of fear and previous intimidation by detectives and FBI agents during interviews.

11. I never had sexual relations or sexual activity with Malachi York. I never witnessed Malachi York having sexual activity with anyone. I do not know of anyone he has ever molested. I do not know of any minors he has ever had sex with. This includes Krystal Harden, Amala Noel, Samaiyah Ellis, Safia LuRoche, Salha Eddington, Husna, and Hasna Evans.

I HEREBY CERTIFY that on this 20 day of May , 2007, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared Radee Muhammad, known to me, or satisfactorily proven, to be the person whose name is subscribed to the within instrument and did acknowledge that executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year aforesaid.

My Commission Expires.

Notary Public

STEVEN GRIFFETH
NOTARY PUBLIC DEKALB COUNTY, GA
MY COMMISSION EXPIRES APRIL 16, 2008

2

AFFIDAVIT OF RADEYA MUHAMMAD

STATE OF GEORGIA
COUNTY OF FULTON

I, RADEYA MUHAMMAD, being first duly sworn and being competent to testify and having personal knowledge of the facts herein, states as follows:

1. My name is Radeya Muhammad. I am 22 years of age and reside in Orlando Florida. I make this affidavit of my own free will. No one has threatened or coerced me to make it. Nor have I been offered anything of value in return for making this affidavit. I am prepared to make this affidavit in order to tell the truth and let it be known.

2. On March 25, 2002 I was taken by my father to the FBI Office in Orlando, Florida and was questioned by FBI agent Savage. My father, Hamdha A. Muhammad was present and did most of the initial talking. I was 17 years old at the time.

3. Prior to meeting with the F.B.I. my father had been in contact with Sheriff Sills for years in relationship to his visitation efforts to see me. It is alleged that my father could not enter the land. My father did not agree with me and my mother moving in and living on the land (404 Shady Dale Road, Eatonton GA). The dispute between my mother, Haroline Herbert and my father was the reason my father was not allowed to visit.

4. I was told that I was important to the case against Malachi York because Habibah Washington had told the FBI about me. I was asked questions about Malachi York and my involvement with Nuwaubians.

5. My father, Hamdha A. Muhammad filed a Civil Suit in Clark County Georgia against Malachi Z. York one month after the arrest of Mr. York. This civil suit has since been dismissed.

6. I was told by the agent that they knew what had happened on the land and what happened to me. They lied to me and told me that Malachi York was already arrested and my statements would not make a difference and I was scared so I went along to just get it over with.

7. I personally feel that statements attributed to me in the F.B.I interview of March 25, 2002 are not my words. There are many, many, inaccuracies. My relationship with Mr. York was like a father- step daughter relationship.

1

# Nuwabians:

The Covington News • Tuesday, May 18, 2004 • 5

Local News

*From front page*

Dwight Johnson.

In the video, Washington claims that she lied to investigators and lied while testifying in the federal trial and asserts that the lies were part of a conspiracy concocted by his estranged son to implicate his father.

According to Washington, York's son, Jacob, convinced her and several other former Nuwaubian members listed on the indictment that, unless they testified that York had molested them and other members, they would be implicated in a looming investigation by the FBI. Jacob York apparently convinced Washington and the other former members during a vacation to Florida. Photographs exist to document the group on their trip.

## Conspiracy against York?

Prior to the vacation, none of the former members had made accusations about York's alleged misconduct. However, within days of returning from the trip, several of them, including Washington, had voluntarily gone to the FBI with allegations of conspiracy and molestation. Despite statements from Assistant U.S. Attorney Richard Moultrie indicating that Washington was not a vital witness to the prosecution, she did hold the position of financial manager under York while living on the Nuwaubian property outside Eatonton.

Washington's testimony regarding York's alleged money structuring activities plays a large role in the entire federal case. York was originally indicted in the federal case on four charges of transporting a minor across state lines for the purpose of having sex with them.

However, York supporters say that the statute of limitations for those counts had already run out. Victims of a crime have only a certain, specified amount of time once the alleged crime has taken place to make a legal accusation.

In this case, according to Johnson, too much time elapsed between the dates of the alleged incidents and the date of the allegations for a legal case to be made.

According to Johnson, federal prosecutors responded with a superseding indictment that includes allegations of crimes that carry a greater statute of limitations. As a result, York supporters argue, the new charges in the indictment — one racketeering count and three counts of evading federal financial reporting requirements — allow the original charges to remain permissible in the lawsuit.

## Case suspended; York in prison

Without the three money structuring counts, however, York's molestation charges are moot, according to Johnson. With Washington as the prosecutions key witness for the money structuring charges, her recantment could throw a wrench into the prosecution's case.

Washington, Ellis and a number of other alleged victims listed on the indictment attended a restitution hearing in the case with the intention of recanting their earlier testimony.

The hearing took place April 23, just days after a jury sentenced York to 135 years in federal prison without the possibility of parole.

Judge C. Ashley Royal denied defense attorneys' attempts to permit any of the testimony, except for that of Washington. Royal suspended the hearing until he could review the law regarding the permissibility of Washington's testimony. The case has yet to move forward.

According to officials, Washington and Ellis could face perjury charges for recanting their testimony.

**Exhibit Y**

# COMMERCIAL LAW KNOWLEDGE PURSUANT TO 27CFR 72.11, 12 CFR 226.10, & 28 USC SECTION 453

5:08-cv-00455-CAR

12/22/2008

# THIRTY (30) PIECE SILVER COINAGE VALIDATION, BY NOTARY VERIFICATION FOR THE USE AS CONSTITUTIONAL PAYMENT FOR SETTLEMENT AND CLOSURE KNOWLEDGE PURSUANT TO TITLE 1 § 1, 48 Stat, ARTICLE 1 § 10 OF THE UNITED STATES CONSTITUTION, THE COINAGE ACT OF 1792, & 12 USC § 152:

EH 519446076 US(US DISTRICT COURT PAYEE), EH 519446028 US(To IRS), EH 519446045 US(US Dept.:Treas.), EH 519446059 US(CO STATE ATTORNEY GEN.), and EH 519446031 US(Dept.:Treas. P.R.);

I _James Lumley_, A PUBLIC NOTARY FOR THE STATE OF _Colorado_,

DUE HEREBY ACKNOWLEDGE THAT _Charles Arell_, _James Amir Ali_,

AND _Jaame-Amen_ APPEARED BEFORE ME ON THE _20_<sup>th</sup> DAY,

IN THE MONTH: _December_, IN THE YEAR: _2008_, POSSESSING A TWO-PIECE

PACKAGE SECURED PRESENTMENT OF THIRTY PIECES OF SILVER COINAGE, REAL

CONSTITUTIONAL MONEY IN THEIR POSSESSION, FOR VALIDATION, BY THIS NOTARIAL

ACKNOWLEDGEMENT, UNDER PENALTIES OF PERJURY, WITHIN THE CITY: _Boulder_

IN THE STATE: _Colorado_ .

## NOTARIAL ACKNOWLEDGEMENT

Notary Acceptor: _James Lumley_    My Commission Expires: _aug/17/2011_

Witness: _____

Witness: _____

Witness: _____

JAMES H LUMLEY
Notary Public
State of Colorado

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 24 2008

GREGORY C. LANGHAM
CLERK

# CERTIFICATION OF SILVER SURETY BOND

KNOW ALL MEN, BY THESE PRESENTS that: *DWIGHT YORK* /:Malachi York El: :®:©™
(*Authorized Representative*) appeared before the undersigned Notary with 30 Silver Coins to establish
this Silver Surety Bond.

This Silver Surety Bond establishes: *DWIGHT YORK* /:Malachi York El:®:©™ as a Sui Juris with
substance(not a pauper, not Bankrupt, not a vagabond)

Now I affix my hand in seal to this document to certify the above claim, establishing a Silver
Surety Bond for :*DWIGHT YORK* / Malachi York El:®:©™

_____
The Trustee:*DWIGHT YORK* / :Malachi York El:®:©™, Living Principal, Surety, Guarantor

_____
**Witness**

_____
**Witness**

_____
**Witness**

_____
**Notary Public**

Registered Surety Act and Bond Number: <u>RR 059 445 061 US DY / MY</u>

Issued By:
The Trustee: *DWIGHT YORK* /:Malachi York El:®:©™,
Living Principal, Surety and Guarantor dolus
*DWIGHT YORK©™* / MALACHI YORK EL©™ dolus
only in my capacity as beneficiary
to the Original Jurisdiction

# DECLARATION FOR NOTICE WITH SURETY ACT AND BOND

§ The united States of America, the perpetual
§           union of sovereign states combined
§               to form a Constitutional Republic
§
§       on the soil of Georgia, a sovereign state
§           within the perpetual Union of States
§
§       at the sovereign county of __*Fulton*__



The Trustee :*DWIGHT YORK©™* / :**Malachi York El:®:©™**, Living Principal, Surety and Guarantor dolus *DWIGHT YORK©™* /MALACHI YORK EL©™, live on the soil of Georgia a Republican form of Government. Acting in good faith and with clean hands, I declare that I am <u>not</u> a corporation or legal fiction. I am a man of age, competent for testifying, and have first-hand knowledge that the facts stated herein are true, correct, complete, certain and not misleading. I hereby and herein declare and proclaim the following:

The Trustee: Malachi York El, Living Principal, Surety and Guarantor dolus DWIGHT YORK©™ / MALACHI YORK EL©™, am acting in good conscience of my own free will and accord, in my capacity as beneficiary to the Original Jurisdiction, and hereby willingly, in the presence of my Creator, El Khaliqa / HuHe, undertake to act as surety, to pledge and provide private bond, in the amount of 30.00 dollar(s) in silver coinage, minted by the American Treasury of the united States of America, with said lawful coin dollars of the united States of America personally held by *DWIGHT YORK©™* / :Malachi York El:®:©™ (Authorized Representative).

This Declaration for Notice with Surety Act and Bond is payment for the case of The Trustee *DWIGHT YORK©™* / :Malachi York El:®:©™ by my appellation, in my capacity as beneficiary to the Original-Jurisdiction, as a full faith guarantee to any lawful Bill of Redemption, duly presented under lawful specie money of account of the united States of America, Original Jurisdiction.

The Bill of Redemption, (Surety Act and Bond) is a tender, as set-off for any alleged contract, agreement, consent or assent purportedly held, as an obligation or duty against The Trustee-*DWIGHT YORK©™* / :Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus DWIGHT YORK / MALACHI YORK EL©™, so as to cause an imputed disability or presumption against the capacity, rights and powers of *DWIGHT YORK©™* / :Malachi York El:®:©™ This Declaration for Notice with Surety Act and Bond under duly establishes, by my witness, in lawful specie money, of The Trustee *DWIGHT YORK©™* / :Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus *DWIGHT YORK©™* / :Malachi York El:®:©™

Declaration for Notice with Surety Act and Bond                    Page 1 of 3

I do make this surety, pledge and bond, as my full faith guarantee to any lawful Bill, duly presented to The Trustee :*DWIGHT YORK*©™ /:Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus *DWIGHT YORK*©™ / MALACHI YORK EL©™, in lawful specie money of account of the united States of America, in the matter of correct public judicial/corporate actions in the forum of Original Jurisdiction and Original Rules, for the benefit of The Trustee *DWIGHT YORK*©™ /:Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus *DWIGHT YORK*©™ / MALACHI YORK EL©™, and his heirs and assigns.

The specific intent of this Declaration for Notice with Surety Act and Bond is to establish, by my witness, in lawful specie dollars of the united States of America, in the sum certain amount of at least 30.00 dollar(s) in silver coinage, minted by the American Treasury of the united States of America and which carry no debt obligations worldwide, available to bond the actions of The Trustee, *DWIGHT YORK*©™ /:Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus *DWIGHT YORK*©™ / MALACHI YORK EL©™. *"AMERICAN BANK AND TRUST COMPANY, ET AL., PETITIONER vs. DALLAS COUNTY, ET AL.", No. 81-1717, a/k/a 463 U.S. 855, 77 L.ED.2D 1072, "No state shall make anything (assuming the name of any State) may take private property for public use without just compensation (AND NOT DEBT PAPER)". At Affidavit file #5325060, #3555, #2312-#2326 at Lee county, Florida state for the united states of America, et al.* Further, in reservation of rights under common law and customs of the united States of America, Original Jurisdiction and Original Rules, The Trustee :DWIGHT YORK©™ /:Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus *DWIGHT YORK*©™ / MALACHI YORK EL©™, cannot be bankrupt or be a vagrant or be a ward of the State, or be the *dolus* trust *"DWIGHT YORK*©™ / MALACHI YORK EL©™", a legal entity, and is not acting in *cessio bonorum.*

The Demand is hereby made for all city, state and federal fiduciaries operating in a corporate capacity, to present a Declaration for Notice with Surety Act and Bond, into evidence in the case of *DWIGHT YORK*©™ /:Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus *DWIGHT YORK*©™ / MALACHI YORK EL©™.
The life of this Declaration for Notice with Surety Act and Bond covers a period of life from the date of issue from the date of issue for the Secured Party Sovereign, Trustee *DWIGHT YORK*©™ /:Malachi York El:®:©™, Living Principal, Surety and Guarantor. *DWIGHT YORK* /:Malachi York El:®:©™ herein confirm, attest, and affirm this Declaration for Notice with Surety Act and Bond. Any and all assumptions and/or presumptions are required to be proven in written form, and signed and sealed before three witnesses, in order to be a valid response.

Failure to, within three business days of receipt, (*Truth In Lending, Regulation Z*) respond to, request additional time for responding for, or refute the foregoing Declaration for Notice with Surety Act and Bond, point for point (see Commercial Maxims of Law), (UCC 1-204) is a default, and the adverse party is collaterally estopped from any further adversarial actions against The Trustee *DWIGHT YORK*©™ / Malachi York El:®:©™, Living Principal, Surety and Guarantor, and for good cause not limited to the laws of collateral estoppel, coercion, fraud and want of jurisdiction of the subject-matter, The Trustee *DWIGHT YORK* /:Malachi York El:®:©™, Living Principal, Surety and Guarantor, sovereign, demands that the cause(s) be vacated and dismissed, and that the accounts be immediately discharged with prejudice. It is hereby made plain and clear that the said failure of response or rebuttal, under penalties of perjury, clearly defines the adverse parties assent to the foregoing Declaration for Notice with Surety Act and Bond, and that a fault exists creating fraud UCC §1-201(16) through material misrepresentation that vitiates all forms, contracts, testimony, agreements, etc., both expressed or implied, from the beginning, (UCC §1-103) of which the adverse party is relying on, and that is no longer permission by consent or assent for any demand of payment being ordered or levied against The Trustee :*DWIGHT YORK*©™ / Malachi York El:®:©™, Living Principal, Surety and

Guarantor further demands that the record of the cause(s) be expunged. Failure to comply with the foregoing Declaration for Notice with Surety Act and Bond, within three business days of receipt, will negate the adverse party's remedies. Any third-parties serving on the cause(s) will be liable for civil and criminal prosecution.

The Trustee :*DWIGHT YORK*©™ /:Malachi York El:®:©™ Living Principal, Surety and Guarantor, hereby and herein explicitly reserve all of my rights without recourse, I hereby and herein <u>claim</u> my right to common law jurisdiction and <u>refuse</u> statutory jurisdiction and/or admiralty jurisdiction.

Asserverated, signed and issued, in good faith and with clean hands, without, *dolus* on this ___17th___ day of the __1c.__ month in the year of our Lord, __2006__, at the county of __Fulton__.

*Teste Meipso*

The Trustee :*DWIGHT YORK*©™ /:Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus DWIGHT YORK©™ / MALACHI YORK EL©™, UCC 1-207, UCC 1-308;

Witness/Trustee: _____

Witness/Trustee: _____

Witness/Trustee: _____

## Authentication

§   The united States of America, the perpetual
§           union of sovereign states combined
§           to form a Constitutional Republic
§
§
§       on the soil of Georgia, a sovereign state
§           within the perpetual Union of States
§
§           at the sovereign county of __Fulton__

Having witnessed the signing and sealing of the foregoing "Declaration for Notice with Surety Act and Bond", by the Trustee :*DWIGHT YORK*©™/:Malachi York El:®:©™, Living Principal, Surety and Guarantor dolus and seal hereon as an authentic act as a Public Notary, on this ___ day of the ___ month in the year of our Lord, __2006__, at the county of __Fulton__.

_____
Public Notary

Seal

Declaration for Notice with Surety Act and Bond                    Page 3 of 3



15

**Exhibit Z**

# International Extradition



McNabb Associates is an international extradition law firm that defends individu charged with transnational crimes, terrorism crimes, and international crimes.

The Firm  Practice Areas  Interpol  Worldwide  Be Proactive  Contact  Disclaimer

## When the FBI Seeks Extradition...®

BILATERAL EXTRADITION TREATIES

### LIBERIA

EXTRADITION

Treaty Series 955

1937 U.S.T. LEXIS 65; 9 Bevans 589

November 1, 1937, Date-Signed

November 21, 1939, Date-In-Force

STATUS:

[*1] Treaty signed at Monrovia November 1, 1937
Senate advice and consent to ratification August 1, 1939
Ratified by the President of the United States August 30, 1939
Ratified by Liberia November 16, 1939
Ratifications exchanged at Monrovia November 21, 1939
Entered into force November 21, 1939
Proclaimed by the President of the United States November 30, 1939

TREATY OF EXTRADITION BETWEEN THE UNITED STATES OF AMERICA
AND THE REPUBLIC OF LIBERIA

TEXT:

All Countries.
Free Consultatio
Call. 1-202-349-4(
OR
+44-20-7743-656
24 Hours

Douglas McNabb
mcnabb@mcnabbassoci.

**Visit Our**

International Extradition

**Our Other Webs**

Terrorism Crin

Transnational Cr

International Cri

Federal Crime

National Security (

Federal Criminal /

Military Crime

Global Criminal Medi

McNabb Associa

**Our Blogs**

International Extradi

Terrorism Crimes

Transnational Crim

International Crimi

The United States of America and the Republic of Liberia, desiring to promote the cause of justice, have resolved to conclude a treaty for the extradition of fugitives from justice between the two countries and have appointed for that purpose the following Plenipotentiaries:

The President of the United States of America:

His Excellency Lester A. Walton, Envoy Extraordinary and Minister Plenipotentiary of the United States of America to Liberia;

The President of the Republic of Liberia:

His Excellency C. L. Simpson, Secretary of State;

Who, after having communicated to each other their respective full powers, found to be in good and due form, have agreed upon and concluded the following articles:

ARTICLE I

It is agreed that the Government of the United [*2] States and the Government of the Republic of Liberia shall, upon requisition duly made as herein provided, deliver up to justice any person who may be charged with, or may have been convicted of, any of the crimes or offenses specified in Article II of the present Treaty committed within the jurisdiction of one of the High Contracting Parties, and who shall seek an asylum or shall be found within the territories of the other; provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed.

ARTICLE II

Persons shall be delivered up according to the provisions of the present Treaty, who shall have been charged with or convicted of any of the following crimes or offenses:

1. Murder (including crimes designated by the terms parricide, poisoning, and infanticide); manslaughter, when voluntary.

2. Malicious wounding or inflicting grievous bodily harm with premeditation.

Federal Crimes

National Security Cri

Federal Criminal Apr

3. Rape, abortion, carnal knowledge of children under the age of sixteen years.

4. Abduction or detention [*3] of women or girls for immoral purposes.

5. Bigamy.

6. Arson.

7. Willful and unlawful destruction or obstruction of railroads, which endangers human life.

8. Crimes committed at sea:

(a) Piracy, as commonly known and defined by the law of nations, or by statutes;

(b) Wrongfully sinking or destroying a vessel at sea or attempting to do so;

(c) Mutiny or conspiracy by two or more members of the crew or other persons on board of a vessel on the high seas, for the purpose of rebelling against the authority of the Captain or Commander of such vessel, or by fraud or violence taking possession of such vessel;

(d) Assault on board ship upon the high seas with intent to do bodily harm.

9. Burglary; house-breaking.

10. The act of breaking into and entering the offices of the Government or public authorities, or other buildings not dwellings with intent to commit a felony therein.

11. Robbery.

12. Forgery or the utterance of forged papers.

13. The forgery or falsification of the official acts of the Government or public authorities, including Courts of Justice, or the uttering or fraudulent use of any of the same.

14. The fabrication of counterfeit money, whether coin or paper,

counterfeit titles [*4] or coupons of public debt, created by National, State, Provincial, Territorial, Local or Municipal Governments, bank notes or other instruments of public credit, counterfeit seals, stamps, dies and marks of State or public administrations, and the utterance, circulation or fraudulent use of the above mentioned objects.

15. Embezzlement.

16. Kidnapping of minors or adults, defined to be abduction or detention of a person or persons, in order to exact money from them, their families or any other person or persons, or for any other unlawful end.

17. Larceny, defined to be the theft of effects, personal property, or money, of the value of twenty-five dollars or more.

18. Obtaining money, valuable securities or other property by false pretenses, or receiving any money, valuable securities or other property knowing the same to have been unlawfully obtained, where the amount of money or the value of the property so obtained or received exceeds one hundred dollars.

19. Perjury.

20. Fraud or breach of trust by a bailee, banker, agent, factor, executor, administrator, guardian, director or officer of any company or corporation, or by any one in any fiduciary position, where the amount of money [*5] or the value of the property misappropriated exceeds one hundred dollars.

21. Crimes and offenses against the laws of both countries for the suppression of slavery and slave trading.

22. Willful desertion or willful non-support of minor or dependent children, or of other dependent persons, provided that the crime or offense is punishable by the laws of both countries.

23. Bribery.

24. Crimes or offenses against the bankruptcy laws.

25. Crimes or offenses against the laws for the suppression of traffic in narcotics.

26. Crimes and offenses against the laws regulating the postal service of both countries, with respect to using the mails to promote frauds.

27. Extradition shall also take place for participation in any of the crimes or offenses before mentioned as an accessory before or after the fact, or in any attempt to commit any of the aforesaid crimes or offenses.

### ARTICLE III

The provisions of the present Treaty shall not import a claim of extradition for any crime or offense of a political character, nor for acts connected with such crimes or offenses; and no person surrendered by or to either of the High Contracting Parties in virtue of this Treaty shall be tried or punished for [*6] a political crime or offense committed before his extradition. The State applied to, or Courts of such State, shall decide whether the crime or offense is of a political character. When the offense charged comprises the act either of murder or assassination or of poisoning, either consummated or attempted, the fact that the offense was committed or attempted against the life of the Head of the State of one of the High Contracting Parties, or against the Sovereign or Head of a foreign State, or against the life of any member of the family of either, shall not be deemed sufficient to sustain that such crime or offense was of a political character, or was an act connected with crimes or offenses of a political character.

### ARTICLE IV

No person shall be tried for any crime or offense, committed prior to his extradition, other than that for which he was surrendered, unless he has been at liberty for one month after having been tried, to leave the country, or, in case of conviction, for one month after having suffered his punishment or having been pardoned.

### ARTICLE V

A fugitive criminal shall not be surrendered under the provisions hereof, when, from lapse of time or other lawful cause, according [*7] to the laws of the demanding country, the criminal is exempt from prosecution or punishment for the offense for which the surrender is asked.

### ARTICLE VI

If a fugitive criminal whose surrender may be claimed pursuant to the stipulations hereof, be actually under prosecution, out on bail or in custody, for a crime or offense committed in the country where he has sought asylum, or shall have been convicted thereof, his extradition may be deferred until such proceedings be determined, and until he shall have been [ILLEGIBLE WORD] liberty in due course of law.

## ARTICLE VII

If a fugitive criminal claimed by one of the two parties hereto, shall be also claimed by one or more powers pursuant to treaty provisions, on account of crimes or offenses committed within their jurisdiction, such criminal shall be delivered to that State whose demand is first received unless the demand is waived.

This article shall not affect such treaties as have previously been concluded by one of the contracting parties with other States.

## ARTICLE VIII

Under the stipulations of this Treaty, neither of the High Contracting Parties shall be bound to deliver up its own citizens, except in cases where such citizenship [*8] has been obtained after the perpetration of the crime for which extradition is sought. The State appealed to shall decide whether the person claimed is its own citizen.

## ARTICLE IX

The expense of transportation of the fugitive shall be borne by the Government which has preferred the demand for extradition. The appropriate legal officers of the country where the proceedings of extradition are had, shall assist the officers of the Government demanding the extradition before the respective judges and magistrates, by every legal means within their power; and no claim other than for the board and lodging of a fugitive prior to his surrender, arising out of the arrest, detention, examination and surrender of fugitives under this Treaty, shall be made against the government demanding the extradition; provided, however, that any officer or officers of the surrendering government giving assistance, who shall, in the usual course of their duty receive no salary or compensation other than specific fees for services performed, shall be entitled to receive from the government demanding the extradition the customary fees for the acts or services performed by them in the

same manner and to the same [*9] amount as though such acts or services had been performed in ordinary criminal proceedings under the laws of the country of which they are officers.

ARTICLE X

Everything found in the possession of the fugitive criminal at the time of his arrest, whether being the proceeds of the crime or offense, or which may be material as evidence in making proof of the crime, shall so far as practicable, according to the laws of either of the High Contracting Parties, be delivered up with his person at the time of surrender. Nevertheless, the rights of a third party with regard to the articles referred to shall be duly respected.

ARTICLE XI

The stipulations of the present Treaty shall be applicable to all territory wherever situated, belonging to either of the High Contracting Parties, or in the occupancy and under the control of either of them, during such occupancy or control.

Requisitions for the surrender of fugitives from justice shall be made by the respective diplomatic agents or superior consular officers of the High Contracting Parties. In the event of the absence of such agents or officers from the country or where extradition is sought from territory included in the preceding paragraphs, [*10] other than the United States or Liberia, requisitions may be made by superior consular officers.

The arrest of the fugitive shall be brought about in accordance with the laws of the respective countries, and if, after an examination, it shall be decided, according to the law and the evidence, that extradition is due pursuant to this Treaty, the fugitive shall be surrendered in conformity to the forms of law prescribed in such cases.

The person provisionally arrested shall be released, unless within two months from the date of commitment in the territory of either one of the High Contracting Parties, the formal requisition for surrender with the documentary proofs hereinafter prescribed shall be made as aforesaid by the diplomatic agent or superior consular officer of the demanding government, or, in his absence, by a consular officer thereof.

If the fugitive criminal shall have been convicted of the crime or offense for which his surrender is asked, a copy of the sentence of the court before which such conviction took place, duly authenticated, shall be produced. If, however, the fugitive is merely charged with crime, a duly authenticated copy of the warrant of arrest in the country [*11] where the crime was committed shall be produced, together with the evidence of criminality mentioned in Article I hereof.

ARTICLE XII

The present Treaty, written in English, shall be ratified by the High Contracting Parties in accordance with their respective constitutional methods, and shall take effect on the date of the exchange of ratifications which shall take place at Monrovia as soon as possible.

ARTICLE XIII

The present Treaty shall remain in force for a period of five years, and in case neither of the High Contracting Parties shall have given notice one year before the expiration of that period of its intention to terminate the Treaty, it shall continue in force until the expiration of one year from the date on which such notice of termination shall be given by either of the High Contracting Parties.

In witness whereof the above named Plenipotentiaries have signed the present Treaty and have hereunto affixed their seals.

Done in duplicate at Monrovia this first day of November, nineteen hundred and thirty-seven.

SIGNATORIES:

LESTER A. WALTON

[SEAL]

C. L. SIMPSON

[SEAL]

Back to top

47,139

N° 4711.

## ÉTATS-UNIS D'AMÉRIQUE ET LIBÉRIA

Traité d'amitié, de commerce et de navigation. Signé à Montrovia, le 8 août 1938.

*Texte officiel anglais communiqué par l'envoyé extraordinaire et ministre plénipotentiaire des États-Unis d'Amérique à Berne. L'enregistrement a eu lieu le 12 avril 1940.*

## UNITED STATES OF AMERICA AND LIBERIA

Treaty of Friendship, Commerce and Navigation. Signed at Monrovia, August 8th, 1938.

*English official text communicated by the Envoy Extraordinary and Minister Plenipotentiary of the United States of America at Berne. The registration took place April 12th, 1940.*

Case 5:08-cv-00455-CAR-GMF    Document 4-6    Filed 01/14/09    Page 42 of 48

## No. 4711. — TREATY [1] OF FRIENDSHIP, COMMERCE AND NAVIGATION BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF LIBERIA. SIGNED AT MONROVIA, AUGUST 8TH, 1938.

THE UNITED STATES OF AMERICA and THE REPUBLIC OF LIBERIA, desirous of strengthening the bond of peace which happily prevails between them, by arrangements designed to promote friendly intercourse between their respective territories through provisions responsive to the spiritual, cultural, economic and commercial aspirations of the people thereof, have resolved to conclude a Treaty of Friendship, Commerce and Navigation and for that purpose have appointed as their Plenipotentiaries,

THE PRESIDENT OF THE UNITED STATES OF AMERICA :

Lester A. WALTON, Envoy Extraordinary and Minister Plenipotentiary of the United States of America to the Republic of Liberia, and

THE PRESIDENT OF THE REPUBLIC OF LIBERIA :

His Excellency C. L. SIMPSON, Secretary of State of the Republic of Liberia,

Who, having communicated to each other their full powers found to be in due form, have agreed upon the following Articles :

### Article I.

The nationals of each of the High Contracting Parties shall be permitted to enter, travel and reside in the territories of the other ; to exercise liberty of conscience and freedom of worship ; to engage in professional, scientific, religious, philanthropic, manufacturing and commercial work of every kind without interference ; to carry on every form of commercial activity which is not forbidden by the local law ; to own, erect or lease and occupy appropriate buildings and to lease lands for residential, scientific, religious, philanthropic, manufacturing, commercial and mortuary purposes ; to employ agents of their choice, and generally to do anything incidental to or necessary for the enjoyment of any of the foregoing privileges upon the same terms as nationals of the State of residence or as nationals of the nation hereafter to be most favored by it, submitting themselves to all local laws and regulations duly established.

The nationals of either High Contracting Party within the territories of the other shall not be subjected to the payment of any internal charges or taxes other or higher than those that are exacted of and paid by nationals of the State of residence.

The nationals of each High Contracting Party shall enjoy freedom of access to the courts of justice of the other on conforming to the local laws, as well for the prosecution as for the defense of their rights, and in all degrees of jurisdiction established by law.

The nationals of each High Contracting Party shall receive within the territories of the other, upon submitting to conditions imposed upon its nationals, the most constant protection and security for their persons and property, and shall enjoy in this respect that degree of protection that is required by international law. Their property shall not be taken without due process of law and without payment of just compensation.

[1] The exchange of ratifications took place at Monrovia, November 21st, 1939.

Nothing contained in this Treaty shall be construed to affect existing statutes of either of the High Contracting Parties in relation to emigration or to immigration or the right of either of the High Contracting Parties to enact such statutes, provided, however, that nothing in this paragraph shall prevent the nationals of either High Contracting Party from entering, traveling and residing in the territories of the other Party in order to carry on international trade or to engage in any commercial activity related to or connected with the conduct of international trade on the same terms as nationals of the most-favored nation.

## Article II.

With respect to that form of protection granted by National, State or Provincial laws establishing civil liability for bodily injuries or for death, and giving to relatives or heirs or dependents of an injured person a right of action or a pecuniary compensation, such relatives or heirs or dependents of the injured person, himself a national of either of the High Contracting Parties and injured within any of the territories of the other, shall, regardless of their alienage or residence outside of the territory where the injury occurred, enjoy the same rights and privileges as are or may be granted to nationals, and under like conditions.

## Article III.

The dwellings, warehouses, manufactories, shops, and other places of business, and all premises thereto appertaining of the nationals of each of the High Contracting Parties in the territories of the other, lawfully used for any purposes set forth in Article I, shall be respected. It shall not be allowable to make a domiciliary visit to, or search of any such buildings and premises, or there to examine and inspect books, papers or accounts, except under the conditions and in conformity with the forms prescribed by the laws, ordinances and regulations for nationals of the State of residence or nationals of the nation most favored by it.

## Article IV.

Where, on the death of any person holding real or other immovable property or interets therein within the territories of one High Contracting Party, such property or interests therein would, by the laws of the country or by a testamentary disposition, descend or pass to a national of the other High Contracting Party, whether resident or non-resident, were he not disqualified by the laws of the country where such property or interests therein is or are situated, such national shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and withdraw the proceeds thereof, without restraint or interference and exempt from any estate succession, probate or administrative duties or charges other than those which may be imposed in like cases upon the nationals of the country from which such proceeds may be drawn.

Nationals of either High Contracting Party may have full power to dispose of their personal property of every kind within the territories of the other, by testament, donation, or otherwise, and their heirs, legatees and donees, of whatsoever nationality, whether resident or non-resident, shall succeed to such personal property, and may take possession thereof, either by themselves or by others acting for them, and retain or dispose of the same at their pleasure subject to the payment of such duties or charges only as the nationals of the High Contracting Party within whose territories such property may be or belong shall be liable to pay in like cases. In the same way, personal property left to nationals of one of the High Contracting Parties by nationals of the other High Contracting Party, and being within the territories of such other Party, shall be subject to the

National, State or Provincial, which are in force or may hereafter be established within the territories of the Party wherein they propose to carry on their activities. The foregoing stipulations do not apply to organization of and participation in political associations.

### Article XIX.

The nationals, including corporations and associations, of either High Contracting Party shall enjoy in the territories of the other Party, upon compliance with the conditions there imposed, most-favored-nation treatment in respect of the exploration for and exploitation of mineral resources ; provided that neither Party shall be required to grant rights and privileges in respect of the mining of coal, phosphate, oil, oil shale, gas and sodium on the public domain, or in respect of the ownership of stock in domestic corporations engaged in such operations, greater than its nationals, corporations and associations receive from the other Party.

It is understood, however, that neither High Contracting Party shall be required by anything in this paragraph to grant any application for any such right or privilege if at the time such application is presented the granting of all similar applications shall have been suspended or discontinued.

### Article XX.

Commercial travelers representing manufacturers, merchants and traders domiciled in the territories of either High Contracting Party shall on their entry into and sojourn in the territories of the other Party and on their departure therefrom be accorded the most-favored-nation treatment in respect of customs and other privileges and of all charges and taxes of whatever denomination applicable to them or to their samples.

If either High Contracting Party requires the presentation of an authentic document establishing the identity and authority of a commercial traveler, a signed statement by the concern or concerns represented, certified by a consular officer of the country of destination shall be accepted as satisfactory.

### Article XXI.

There shall be complete freedom of transit through the territories including territorial waters of each High Contracting Party on the routes most convenient for international transit, by rail, navigable waterway, and canal, other than the Panama Canal and waterways and canals which constitute international boundaries, to persons and goods coming from, going to or passing through the territories of the other High Contracting Party, except such persons as may be forbidden admission into its territories or goods of which the importation may be prohibited by law or regulations, provided that the foregoing shall not be construed to prevent either High Contracting Party from excluding aliens from special areas within its territories closed to visit by law, military order or regulations. The measures of a general or particular character which either of the High Contracting Parties is obliged to take in case of an emergency affecting the safety of the State or vital interests of the country may, in exceptional cases and for as short a period as possible, involve a deviation from the provisions of this paragraph, it being understood that the principle of freedom of transit must be observed to the utmost possible extent.

Persons and goods in transit shall not be subjected to any transit duty, or to any unnecessary delays or restrictions, or to treatment as regards charges, facilities, or any other matter less favorable than that accorded to the most-favored nation.

N° 4711

Goods in transit must be entered at the proper customhouse, but they shall be exempt from all customs or other similar duties.

It is understood that all goods in transit through the territory of the United States of America and all goods in transit through the territory of Liberia when warehoused or otherwise stored shall be subject to storage charges.

All charges imposed on transport in transit shall be reasonable, having regard to the conditions of the traffic.

Nothing in this Article shall affect the right of either of the High Contracting Parties to prohibit or restrict the transit of arms, munitions and military equipment in accordance with treaties or conventions that may have been or may hereafter be entered into by either Party with other countries.

### Article XXII.

Nothing in this Treaty shall be construed to prevent the adoption of measures prohibiting or restricting the exportation or importation of gold or silver, or to prevent the adoption of such measures as either High Contracting Party may see fit with respect to the prohibition, or the control, of the export or sale for export, of arms, ammunition, or implements of war, and, in exceptional circumstances, all other military supplies.

Subject to the requirement that, under like circumstances and conditions, there shall be no arbitrary discrimination by either High Contracting Party against the other High Contracting Party in favor of any third country, the stipulations of this Treaty shall not extend to prohibitions or restrictions (1) imposed on moral or humanitarian grounds ; (2) designed to protect human, animal, or plant life or health ; (3) relating to prison-made goods ; (4) relating to the enforcement of police or revenue laws.

The stipulations of this Treaty do not extend to advantages now accorded or which may hereafter be accorded to neighboring States in order to facilitate short frontier traffic, or to advantages resulting from a customs union to which either High Contracting Party may become a party so long as such advantages are not extended to any other country.

The stipulations of this Treaty do not extend to advantages now accorded or which may hereafter be accorded by the United States of America, its territories or possessions or the Panama Canal Zone to one another or to the Republic of Cuba. The provisions of this paragraph shall continue to apply in respect of any advantages now or hereafter accorded by the United States of America, its territories or possessions or the Panama Canal Zone to one another, irrespective of any change in the political status of any of the territories or possessions of the United States of America.

### Article XXIII.

Subject to any limitation or exception hereinabove set forth, or hereafter to be agreed upon, the territories of the High Contracting Parties to which the provisions of this Treaty extend shall be understood to comprise all areas of land and water over which the Parties, respectively, claim and exercise dominion as sovereign thereof, except the Panama Canal Zone.

### Article XXIV.

The present Treaty shall come into force in all of its provisions on the day of the exchange of ratifications and shall continue in force for the term of five years from that day.

If within one year before the expiration of five years from the date on which the present Treaty shall come into force, neither High Contracting Party notifies to the other Party an intention

of terminating the Treaty upon the expiration of the aforesaid period of five years, the Treaty shall remain in full force and effect after the aforesaid period and until one year from such a time as either of the High Contracting Parties shall have notified to the other Party an intention of terminating it.

The present Treaty shall, from the date of the exchange of ratifications, be deemed to supplant the Treaty[1] of Commerce and Navigation between the United States of America and Liberia, concluded at London on October 21st, 1862.

### Article XXV.

The present Treaty shall be ratified, and the ratifications thereof shall be exchanged at Monrovia as soon as possible.

In witness whereof the respective Plenipotentiaries have signed the present Treaty and have affixed their seals thereto.

Done in duplicate, at Monrovia, this eighth day of August nineteen hundred and thirty eight.

*(Seal)*    Lester A. WALTON.                    *(Seal)*    C. L. SIMPSON.

Certified to be a true and complete textual copy of the original treaty in the sole language in which it was signed.

For the Secretary of State
of the United States of America :

Edward Yardley,
*Director of Personnel.*

---

[1] *British and Foreign State Papers,* Vol. 52, page 226.

Case 5:08-cv-00455-CAR-GMF    Document 4-6    Filed 01/14/09    Page 47 of 48

No. 5596. EXCHANGE OF NOTES CONSTITUTING AN AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND LIBERIA RELATING TO THE GUARANTY OF PRIVATE INVESTMENTS. MONROVIA, 6 AND 12 SEPTEMBER 1960[1]

EXCHANGE OF NOTES CONSTITUTING AN AGREEMENT[2] SUPPLEMENTING THE ABOVE-MENTIONED AGREEMENT. MONROVIA, 26 AND 29 SEPTEMBER 1964

*Official text: English.*
*Registered by the United States of America on 27 April 1965.*

I

*The American Ambassador to the Liberian Secretary of State*

Monrovia, September 26, 1964

Sir:

I have the honor to refer to the agreement effected by the exchange of notes of September 6 and September 12, 1960[1] between our two Governments relating to investment guaranties which may be issued by the Government of the United States of America for investments in activities in Liberia. After the conclusion of this agreement, legislation has been enacted in the United States of America modifying and augmenting the coverage to be provided investors by investment guaranties that may be issued by the Government of the United States of America.

In the interest of facilitating and increasing the participation of private enterprise in furthering the economic development of Liberia, the Government of the United States of America is prepared to issue investment guaranties providing such coverage as may be authorized by the applicable United States legislation for appropriate investments in activities approved by your Government provided that your Government agrees that the undertakings between our respective Governments contained in the above-mentioned agreement will be applicable to such guaranties.

In connection with application of the undertakings contained in the above-mentioned agreement to all investment guaranties issued by the Government of the United States of America, I also have the honor to propose that the Subparagraphs (d) and (e) of Paragraph 3 of the above-mentioned agreement be considered as no longer in effect.

I confirm the mutual understanding of the parties to the present Agreement that, in case the Government of the United States of America makes payment to a United States investor under a guaranty against loss due to normal business risk arising from transactions with entities other than the Government of the Republic of Liberia, the Government of the United States of America would have no claim against the Govern-

---

[1] United Nations, *Treaty Series*, Vol. 389, p. 245.
[2] Came into force on 29 September 1964 by the exchange of the said notes.

ment of the Republic of Liberia resulting from such payment by the Government of the United States of America.

Upon receipt of a note from Your Excellency indicating that the foregoing is acceptable to the Government of the Republic of Liberia and that such undertakings shall apply, the Government of the United States of America will consider that this note and your reply thereto constitute an Agreement between our two Governments on this subject, the Agreement to enter into force on the date of your note in reply.

Accept, Excellency, the assurances of my highest consideration.

C. E. RHETTS

His Excellency J. Rudolph Grimes
Secretary of State

II

*The Liberian Acting Secretary of State to the American Ambassador*

DEPARTMENT OF STATE
MONROVIA, LIBERIA

14472/DF

29th September, 1964

Mr. Ambassador :

I have the honour to acknowledge receipt of your letter dated September 26, 1964, relating to the Investment Guaranty Agreement which was concluded between the Government of the United States of America and the Government of the Republic of Liberia on September 12, 1960, which letter reads word for word as follows :

[See note I]

The Government of Liberia accepts the undertakings in this letter and understands that upon receipt thereof, your letter and this letter shall constitute an agreement between the Government of the Republic of Liberia and the Government of the United States of America to enter into force on the date of this letter.

Please accept, Mr. Ambassador, the assurance of my high consideration and esteem.

Edward R. Moore
Acting Secretary of State

His Excellency Charles E. Rhetts
Ambassador Extraordinary and Plenipotentiary
Embassy of the United States of America
Mamba Point, Monrovia, Liberia